## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**COLONY INSURANCE COMPANY**                                        **PLAINTIFF**

**v.**                                        **CAUSE NO. 1:16CV191-LG-RHW**

**FIRST SPECIALTY**
**INSURANCE CORPORATION**                                        **DEFENDANT**

### MEMORANDUM OPINION AND ORDER GRANTING
### SUMMARY JUDGMENT IN FAVOR OF DEFENDANT
### AND DENYING AS MOOT MOTION TO STRIKE

BEFORE THE COURT are the [8, 16] Cross Motions For Summary

Judgment filed by Defendant First Specialty Insurance Corporation and Plaintiff

Colony Insurance Company, respectively, and the [25] Motion to Strike Portions of

the Affidavit of Larry I. Gramovot filed by Defendant First Speciality.  The parties

agree that Mississippi law applies to this diversity action.  Having considered the

submissions of the parties, the oral arguments of counsel, and the relevant law, the

Court is of the opinion that Colony's equitable subrogration claim is subject to

Mississippi's voluntary payment doctrine, and, further, that Colony cannot sustain

an implied indemnity claim against First Speciality under Mississippi law.

Accordingly, the Court will grant summary judgment in favor of First Speciality.

Because the Court did not consider the Gramovot affidavit in ruling on the pending

Motions, the Court will deny the Motion to Strike as moot.

### BACKGROUND

The parties have conceded that the underlying facts necessary to decide the

cross motions are not genuinely disputed.  Although the parties have set out those

facts in great detail in their briefing, the Court will include a short discussion of the facts here. This action arose out of an industrial explosion that occurred at the Omega Protein plant in Moss Point, Mississippi, tragically killing Jerry Lee Taylor, II, and seriously injuring three others. The workers were employees of Accu-Fab, which is insured by Plaintiff Colony. Defendant First Speciality is the excess insurer for Omega.

Taylor's estate brought a separate wrongful death claim against Omega. According to Colony, Omega was insured by Ace American Insurance Company (AAIC) up to $1,000,000, and First Speciality was Omega's excess carrier in the amount of $10,000,000. Omega subsequently made a demand against Accu-Fab's insurer, Plaintiff Colony. Omega claimed that it was an "additional insured" under Accu-Fab's policy with Colony. Omega "tendered the defense of the Taylor Action to Colony, and Colony provided and funded a defense to Omega" under a reservation of rights. (*See* Compl. 3 (¶12), ECF No. 1).

Early in the litigation, the *Taylor* plaintiff made a policy limits settlement demand on Colony, which Colony ultimately agreed to pay. AAIC also settled for its policy limits. Colony states that "[p]rior to settlement, [it] made a demand on" First Specialty, contending that coverage was precluded under the Colony policy, and that "First Specialty, as Omega Protein's excess liability insurer, was . . . obligated to defend and indemnify Omega Protein for those amounts in excess of the $1,000,000 policy limits provided by the Underlying AAIC policy." (*See* Compl. 5 (¶18), ECF No. 1). Colony claims that First Speciality declined to do so "and

2

refused to contribute to the settlement of the Taylor Action." (*See id.* (¶19)).

> Colony specifically contends that the Underlying AAIC Policy provided coverage to Omega Protein, and the First Specialty Policy provided excess coverage for the claims asserted against Omega Protein in the Taylor Action. Since the policy limit of the Underlying AAIC policy was insufficient to satisfy the claims against Omega Protein, First Specialty's duty to defend and indemnify its insured was triggered under the First Speciality Policy.

(*Id.* at 6 (¶22)). Colony further contends that "Omega Protein did not qualify as an additional insured under the Colony policy, and therefore the Colony policy provided no coverage whatsoever for Omega Protein." (*Id.* (¶23)).[1] As a result, Colony instituted this action against First Specialty seeking equitable subrogation and/or indemnity from First Specialty for the $1,000,000 settlement and defense costs expended in *Taylor*.

DISCUSSION

First Speciality has moved for summary judgment, arguing, *inter alia*, that Mississippi's voluntary payment doctrine precludes Colony's claims for equitable subrogation and implied indemnity. Colony has also filed a cross motion, arguing that the Court should hold that it is entitled to subrogation and/or indemnity as a matter of law. The Court discusses each of Colony's claims in turn below.

**Voluntary Payment Doctrine/ Equitable Subrogation**

Discussing Mississippi law, the Fifth Circuit recently explained that "[a]

---

[1] Colony has steadfastly contended that the "Total Pollution Exclusion" provision in the policy precluded coverage and that Omega did not qualify as an "additional insured" under the Colony policy because the accident at issue was not "caused" by Accu-Fab.

voluntary payment is a payment made without compulsion, fraud, mistake of fact, or agreement to repay a demand which the payor does not owe, and which is not enforceable against him." *S. Ins. Co. v. Affiliated FM Ins. Co.*, 830 F.3d 337, 347 (5th Cir. 2016) (citation and quotation marks omitted). "Such a payment, once made, cannot be recouped." *Id.* "Courts analyzing the doctrine have concluded payments were involuntary in a variety of circumstances." *Id.* (collecting cases). Relevant to this action, where an insurer acts "pursuant to its duty to pay, it cannot be considered a volunteer." *See id.* In other words, "a contractually-obligated payment between insurer and insured" is not voluntary. *See id.*

The Mississippi Supreme Court most recently discussed voluntary payments in *Indemnity Insurance Co. of North America v. Guidant Mutual Insurance Co.*, 99 So. 3d 142 (2012).[2] It stated that "[a]n insurer has a duty to protect the interests of its insured, 'which includes the duty to settle claims within the policy limits on objectively reasonable terms.'" *See id.* at 151 (citation omitted). It continued that "[i]n addition to the requirement that an insurer protect the interests of its insured, this Court recognizes that the law and public policy favor the settlement of disputes." *See id.* It concluded that an insurer has "a legal duty to consider the insured's best interest and to make an honest evaluation of a settlement offer within the policy limits[,]" and cannot be considered a voluntary payor "if the settlement amount was reasonable." *See id.* at 151-152.

---

[2] This case has been referred to as *Guidant II*, and the Court will refer to it as such herein.

Therefore, Mississippi law is now clear:

> [I]n order to avoid being treated as a mere volunteer under the volunteer payment doctrine, an insurer need not be . . . subject to a legal judgment.  Instead, an insurer that settles a claim and/or pays legal expenses of an insured may seek contribution from another insurer that also owed those expenses, as long as the insurer seeking contribution was under a *legal duty* to pay those.

Miss Ins. Law and Prac. § 14.3 (emphasis in original) (citing to *Guidant II*).

Colony's arguments for equitable subrogation are inherently contradictory. It asks this Court to find as a matter of law (1) that it owed no legal duty to Omega and (2) that even though its owed no legal duty to Omega, its payments to settle the Omega action were not voluntary.  According to Colony, "If Omega's contention that it was an additional insured under the Colony policy proved to be correct, Colony had a duty to settle the Taylor claims on objectively reasonable terms . . . ."  (Colony Opp. 27, ECF No. 13).  The problem with this argument is that Colony has disclaimed that Omega was its insured with respect to the claims made in *Taylor*, *i.e.*, it never had a duty to Omega at all, and, thus, was under no contractual obligation to pay anything.  Colony has reaffirmed at oral argument that its position is, and has always been, that it did not insure Omega.

While *Guidant II* narrowed Mississippi's voluntary payment doctrine with respect to insurance settlements, in that case and in all of the cases wherein courts have found the doctrine inapplicable, the settlement payments were made on behalf of an *insured* by its insurer, which Colony admits is not the case here.  For example, although liability was disputed in *Guidant II*, it was undisputed that the appellee

insurer actually insured the party on behalf of whom it paid a settlement. *Guidant II* does not stand for the proposition advanced by Colony that an insurer can and should recover for payments made on behalf of a defendant that it did not even insure simply because it feared that the defendant might be an additional insured under its policy. Colony stated at oral argument that it was "legally reasonable" for it to settle the *Taylor* claim. However, the correct standard is "legal duty," *see, e.g.*, Miss Ins. Law and Prac. § 14.3, which, again – accepting Colony's position for summary judgment purposes – it never had a legal duty to Omega.

Instead, the Court is of the opinion that this action is more akin to *Mississippi Farm Bureau Casualty Insurance Co. v. Amerisure Insurance Co.*, No. 3:11-cv-706-CWR-FKB, 2013 WL 286364 (S.D. Miss. Jan. 24, 2013). There, the Court found that under the face of the complaint rule, an insurer who provided a liability defense to the employer of its insured on the theory that the employer *might* be an additional insured as a person vicariously liable for employee's conduct did not have an obligation to defend claims based on negligent supervision of employee or claims arising from alleged intentional conduct. The Court found that doing so without legal obligation prevented recovery of defense expenses under the volunteer payment doctrine, and granted summary judgment in favor of the defendant. *See id.* at *6-10; *see also* Miss Ins. Law and Prac. § 14.3 n.14 ("Where there is no legal duty to defend, the insurer payor will still be a volunteer.").

Colony's position is that under the face of the complaint in *Taylor*, it had no duty to defend Omega at all. Accepting that premise as correct, then Colony also

had no contractual obligation to settle within its policy limits, and was a voluntary payor in doing so.[3]  Accordingly, First Speciality is entitled to summary judgment on the equitable subrogation claim.

**Implied Indemnity**

Colony's implied indemnity claim fails for a similar reason.  A critical prerequisite of this claim is that "[t]he damages which the claimant seeks to shift [we]re imposed upon [the claimant] as a result of some legal obligation to the injured" party.  *See T & S Express, Inc. v. Liberty Mut. Ins. Co.*, 847 So. 2d 270, 272 (Miss. Ct. App. 2003).  To prevail, Colony must "prove that there was a legal obligation to pay . . . ."  *See id.*  This "key element" is missing here.  *See id.* at 273.  "[T]he mere compromise of a disputed claim" is not equivalent to "the payment of a legal obligation . . . ."  *See id.*  Colony has conceded that it was not obligated to pay because it did not insure Omega.  Therefore, First Speciality is also entitled to summary judgment on this claim.

---

[3] While this result may appear harsh or unfair, Colony had other available remedies to avoid this outcome.  In fact, Colony filed a declaratory judgment action in the state court to determine the coverage issue, but elected to dismiss that action in favor of a quick settlement.  *See Miss. Farm Bureau Casualty Ins. v. Amerisure*, 2013 WL 286364, at *8.  Even if Colony had conceded that Omega was its insured but argued that its pollution exclusion applied, the First Speciality policy contained a similar pollution exclusion.  The Court is not persuaded by Colony's arguments that First Speciality waived its exclusion or that the Colony policy is somehow unambiguous while the First Speciality exclusion is ambiguous.  However, the Court need not decide this issue given Colony's adamant position that it was never Omega's insurer.

CONCLUSION

For the reasons discussed above, the Court is of the opinion that Defendant First Speciality's Motion for Summary Judgment should be granted and that Plaintiff Colony's Cross Motion should be denied.  The Court is also of the opinion that First Speciality's Motion to Strike is moot.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [8] Motion for Summary Judgment is **GRANTED**, the [16] Cross Motion for Summary Judgment is **DENIED**, and the [25] Motion to Strike is **DENIED AS MOOT**.  The Court will enter a separate Judgment in Accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED** this the 3rd day of February, 2017.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE